UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JULIUS C. CLARK-WILLIS #726262,      Case No. 2:18-cv-00007

      Plaintiff,       Hon. Gordon J. Quist
                                                           U.S. District Judge

v.

ROBERT NAPEL, et al.,

      Defendants.
_____/

# REPORT AND RECOMMENDATION

## Introduction

This is a civil rights action brought by state prisoner Julius C. Clark-Willis pursuant to 42 U.S.C. § 1983. Plaintiff filed his complaint on January 23, 2018, alleging that Defendants violated his rights while he was confined at the Marquette Branch Prison (MBP) and the Ionia Correctional Facility (ICF). Plaintiff is currently confined at the Oaks Correctional Facility.

The remaining Defendants – MBP Resident Unit Manager Darrin Viitala, MBP Assistant Resident Unit Supervisor Michael Laitinen, MBP Corrections Officer Scott Nadeau, and ICF Corrections Officer Dewey Watkins – filed a motion for summary judgment (ECF No. 21) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff did not respond.

The undersigned respectfully recommends that this Court (1) grant the motion as to Defendants Viitala, Scott, and Nadeau (2) grant the motion as to all claims against Defendants, except Plaintiff's retaliation claims and mail interference claim.

**Plaintiff's allegations**

Plaintiff alleges that while he resided at ICF, he made requests for protection on several occasions due to prison gang threats. Plaintiff says he informed prison officials that he would be assaulted if he was transferred to MBP. On April 10, 2017, the Security Classification Committee decided that protection was not warranted, but due to a "conflict situation" at ICF, Plaintiff would be transferred to an alternative level V facility.

Plaintiff filed a grievance against Defendant Watkins for denying him the opportunity to exercise. Defendant Watkins allegedly told Plaintiff that he knew how to fix Plaintiff's "rat ass." The next day, Plaintiff was notified that he would be transferred. After his property was packed, Plaintiff was told "I don't know what you did to Watkins, but good luck on your property."

Plaintiff transferred to MBP on April 20, 2017. Plaintiff's AM/FM radio, headphones, and MP3 player were missing. There was a note that indicated that his property bag was open when received at MBP. Plaintiff was told to give the property room a few days to locate his property. Plaintiff filed a grievance thirty days later. The grievance was rejected.

Plaintiff was placed in segregation and alleges that he received threats from gang members who placed a hit on him. Plaintiff says that Defendants refused to

investigate. Plaintiff was moved to the Interim Care Program (ICP) in general population. Plaintiff grieved his placement because he was not provided the same privileges as prisoners not in the program. Defendants Laitinen and Nadeau told Plaintiff to stop filing grievances if he wanted to stay in ICP. Alternatively, Defendants Laitinen and Nadeau stated that Plaintiff could sign out of the program and deal with gang members in general population.

Plaintiff alleges that Defendants suspended his "Jpay" account and denied him privileges because he was classified as a Security Threat Group (STG) prisoner. Plaintiff asserts that Defendant Nadeau issued Plaintiff two misconduct reports and told Plaintiff that he was drawing too much attention to himself, and that staff was getting angry with him. Defendant Nadeau informed Plaintiff to expect to continue receiving tickets as long as he complained about the program.

On August 23, 2017, Plaintiff requested an expedited legal disbursement to pay an initial court filing fee. Defendant Viitala stated "you think I'm going to grant you a loan to sue me?" Plaintiff alleges that his case could be dismissed.

Plaintiff alleges that he received a threat on August 29, 2017, from prisoner McCauley. McCauley told Plaintiff that he would throw bodily fluids on Plaintiff and that he had Hepatitis C. Defendants refused to move Plaintiff, and McCauley carried out the threat that same day. Plaintiff wanted to press charges, but Defendants Nadeau and Laitinen told Plaintiff that if he continued to press the issue, they would send Plaintiff to segregation on a false misconduct.

3

Plaintiff alleges that Defendants interfered with his mail by discarding or rejecting mail without giving him a hearing. Plaintiff alleges that Defendants gave his mail to other prisoners. Defendants Nadeau and Laitinen allegedly stated that Plaintiff's stay in F-Block would be hard because he was a complainer who filed grievances.

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel*, 270 F.3d at 1056 (citing 11 James William Moore, et al., *Moores Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint.

6

Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity'

7

>to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for a medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

---

[1] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of Policy Directive 03.02.130. *Id.* at ¶ Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

## Analysis

Defendants Viitala, Nadeau, and Watkins argue that Plaintiff failed to exhaust his administrative remedies. Defendant Laitinen concedes that Plaintiff exhausted his retaliation claim regarding the failure to process his mail. Defendant Laitinen argues that the other claims asserted against him remain unexhausted.

Defendants submitted as an exhibit the MDOC Prisoner Step III Grievance Report. (ECF No. 22-3, PageID.179-184). The report establishes that Plaintiff failed to exhaust his administrative grievances against Defendants Viitala, Nadeau, and Watkins. The report also establishes that Plaintiff filed and exhausted two grievances naming Defendant Laitinen.

In **grievance identifier MBP-17-10-1587-15b**, Plaintiff asserted that, on October 9, 2017, he filled out a disbursement for a loan to send the Special Activities Coordinator a kite regarding his grievance and lawsuit. The "ARUS" denied the loan. Plaintiff asserted that this was retaliation. (ECF No. 22-3, PageID.187).

The Step I grievance response indicated that Defendant ARUS Laitinen was interviewed. The response noted that theloan for postage was denied because Plaintiff failed to present proper documentation to determine whether he met the criteria for a loan. (PageID.188.) Plaintiff's grievance was denied at Step II and Step III. (PageID.185-186.)

In **grievance identifier MBP-17-08-1351-1z**, Plaintiff alleged that he was required to pay an initial partial filing fee of $1.44 to the U.S. District Court. Defendant Laitinen refused to take the disbursement form because the facility did not provide loans to pay court fees. Plaintiff alleged that Defendant Laitinen denied him access to the courts. (PageID.199.) The Step I response stated that a loan for indigent prisoners will not be provided to cover legal fees. (PageID.200.) Plaintiff's Step II and Step III grievance appeals were denied. (PageID.197-198.)

Liberally construing Plaintiff's complaint, the only claim that Plaintiff exhausted involves his grievances against Defendant Laitinen. The only arguable claim that could remain in this case is that Defendant Laitinen retaliated and interfered with Plaintiff's mail by denying him postage loans on October 9, 2017. Plaintiff failed to exhaust all other claims.

## Recommendation

I respectfully recommend that the Court grant the motion for summary judgment (ECF No. 21) filed by Defendants Viitala, Laitinen, Nadeau, and Dewey asserting that Plaintiff failed to exhaust his administrative remedies.

If the Court accepts this recommendation Defendant Viitala, Nadeau, and Dewey should be dismissed without prejudice and all claims against Defendant Laitinen, except for the claim that he retaliated and interfered with Plaintiff's mail by denying postage loans on October 9, 2017, should be dismissed.


Dated:   June 4, 2019                              /s/ *Maarten Vermaat*
                                                   MAARTEN VERMAAT
                                                   U. S. MAGISTRATE JUDGE


## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).